CLERK'S OFFICE
A TRUE COPY
Nov 22, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br> )<br>**Target Devices A, B, & C, currently in FBI** )<br>**custody, as further described in Attachment A** ) | Case No.　23　MJ　220 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

　See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

　See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Possession with the intent to distribute, and conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:
See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Cowan, FBI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ___11/22/2023___　　　　　_____
*Judge's signature*

City and state: Milwaukee, WI　　　Honorable William E. Duffin, U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Jacob Cowan, being duly sworn, state the following information to be true to the best of my knowledge, information, and belief:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a sworn federal law enforcement officer with the Federal Bureau of Investigation (FBI), with authority to investigate federal offenses pursuant to Titles 18, and 21 of the United States Code. I have been employed as a Special Agent with the FBI since June 2016. Prior to this, I served as an Officer in the United States Army for twelve years. I have obtained a Bachelor of Science Degree in Criminal Justice from the University of Wisconsin-Milwaukee, a Master's in Professional Studies (M.P.S.) from St. John's University, and a Post Graduate Certificate from the Kennedy School of Government at Harvard University. I graduated from the FBI Academy in Quantico, Virginia in 2016 and have over seven years of law enforcement experience. I have been involved in the enforcement and investigation of numerous violations of federal law to include drug trafficking investigations, firearm trafficking investigations, and violent crime related cases. I have personally conducted and participated in numerous

investigations that have given me familiarity with the various methods that criminals use to conduct illicit firearm and narcotics transactions in violation of federal law. I have used investigative techniques including, but not limited to: consensual monitoring, physical surveillance, witness and subject interviews, court authorized electronic surveillance, review and analysis of telephone records, and the execution of search and arrest warrants.

3.     In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

4.     As such, I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States," within the meaning of Section 3051(a) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21.

5.     Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data).  Rule 41 of the Federal Rules of Criminal Procedure

2

permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

6.  To this end, based upon my training and experience, I know that individuals involved in drug trafficking commonly use cellular telephones to facilitate their drug trafficking activities. I have also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.  I know that drug traffickers commonly maintain and possess multiple cellular telephones, swap out cellular telephones routinely (i.e., discontinue use of one or more cellular telephones and replace them with new phones in hopes of evading detection by law enforcement), and sometimes allow other drug trafficking associates to use their phones to conduct drug trafficking business. I also know that it is common for crime suspects who illegally possess controlled substances and firearms to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the controlled substances and firearms that they control, possess, buy, and sell.

7.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.  The property to be searched is described as follows:

a. One black Apple iPhone bearing IMEI# 353182930612634 (hereinafter "**TARGET DEVICE A**");

b. One black Nokia cellular telephone bearing IMEI# 358712911622601 (hereinafter "**TARGET DEVICE B**"); and

c. One black Nokia cellular telephone bearing IMEI# 358712915453102 (hereinafter "**TARGET DEVICE C**").

9. **TARGET DEVICES A**, **B**, **and C,** collectively the **TARGET DEVICES**, are currently located within FBI Evidence, located at 3600 South Lake Drive, St. Francis, Wisconsin.

10. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

11. I am investigating Joshua MARTIN ("MARTIN"), who is suspected of possessing with the intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841.

12. On or about November 12, 2023, a Mount Pleasant Police Officer received a call for service from the manager at the Kwik Trip gas station located at 943 SE Frontage Road, Village of Mount Pleasant, Racine, Wisconsin, for a welfare check for a Hispanic male leaning against a dumpster. The manager of the Kwik Trip also alerted officers to a black male who appeared to be passed out in a black Dodge Charger, which vehicle was

4

running and parked in front of the store. The manager informed officers that were enroute to the Kwik Trip that the black male in the Dodge Charger appeared to be breathing but also appeared to be intoxicated.

13.     Upon officers arriving at the Kwik Trip, they located the black in color Dodge Charger in front of the store. Upon pulling up to the vehicle, officers observed the vehicle had its headlights illuminated and left turn signal was activated, and the vehicle was parked in two different parking spaces. Officers positioned their vehicle in back of the Dodge Charger, bearing Wisconsin license plate 18134AFT, which came back to a rental company, exited their marked squad unit and approached the driver's side door.

14.     The officer observed the driver's window was cracked and a black male appeared to be unconscious in the driver's seat. The officer called out to the black male several times with no response. Due to the officer not knowing if the black male required medical attention, the officer opened the driver's side door and conducted a sternum rub, when the black male slowly regained consciousness. The black male began to speak very slow with broken sentences. The officer asked the black male if he took anything, and the black male said he took a pain pill. The officer dispatched emergency medical services to the Kwik Trip service station. The officer observed vomit in the vehicle and just outside the driver's side door.

15.     While waiting for emergency medical services to arrive to the location, the black male began to lean to his right side and stick his hand in his pocket. The officer told the black male multiple times to take his hand out of his pocket, and the male eventually complied. For safety, the officer positioned himself in a manner in which the black male

5

could not exit the vehicle, while the officer waited for back up to arrive. Once another officer arrived to the location, the officer had the black male exit the driver's seat of the vehicle for a pat down and so that he would be seen by emergency medical services. The black male had trouble gaining his balance. The officer believed due to his training and experience that the black male was under the influence of narcotics and had possibly overdosed.

16.     The officer conducted a pat down frisk for weapons. Upon the officer's pat down on the black males' right pants pocket without manipulation of the clothing, the officer felt a large bulge, which was consistent with a large baggie of individual pills. As the officer continued the pat down, the black male began to step away. The officers then took control of the black male's arms, stabilized him, and detained him by placing him in handcuffs. Once in handcuffs, the officer then went to the right pocket of the black male and removed a clear plastic baggie with a large quantity of blue pills with M30 printed on them. The black male was taken into custody. The officer believed through his training and experience that M30 pills were known to be counterfeited and manufactured pressed pills possibly containing fentanyl. The black male verbally stated his name was Joshua MARTIN, and his identity was later confirmed by the officer through the DOT file and photograph. Officers also learned that MARTIN was on extended supervision for a felony, which qualified him for an ACT 79 search under Wisconsin Statute.

17.     MARTIN was transported by emergency medical personnel to the Emergency Room.

18.     Officers responded to the Emergency Room where MARTIN was transported. MARTIN appeared to be more alert, so the officer administered a Field Sobriety Test on MARTIN. MARTIN agreed to the Field Sobriety Test and was administered the HGN test, the One Leg Stand Test, and the Walk and Turn Test. Due to the results of the tests, MARTIN was in custody for Operating Motor Vehicle While Impaired. MARTIN was administered his Miranda Rights, at which time he requested an attorney. After MARTIN invoked his right to counsel, he spontaneously uttered that the pills did not belong to him.

19.     Officers then inventoried the blue M30 pills, which totaled approximately 904 pills with a package weight of 97.6 grams. Using the pill identifier from Drugs.com, the blue M30 pills were identified as Oxycodone Hydrochloride. Based on their training and experience, law enforcement officers believe that the blue M30 pills may likely be counterfeit Oxycodone Hydrochloride pills. Therefore, one pill was crushed into a powder and subjected to a fentanyl field test, which test returned negative for fentanyl. However, I know that field testing of counterfeit M30 pills has produced false negative results for the presence of fentanyl. Accordingly, I believe based on my training and experience that the pills seized from MARTIN contain either Oxycodone Hydrochloride or fentanyl, both Schedule II controlled substances. The pills have been sent to the laboratory for further testing.

20.     The Affiant reviewed MARTIN's criminal history and observed the following felony convictions associated to him:

7

a.  February 6, 2009, Kenosha County Circuit Court felony conviction for Possession with Intent to Distribute, Court Case # 302008CF000915.

b.  April 8, 2009, Racine County Circuit Court felony conviction for Possession with Intent to Distribute, Court Case # 512008CF000802.

c.  August 25, 2020, Racine County Circuit Court felony conviction for Possession of a Firearm-Convicted Felon, Court Case # 52003000943481.

21.  As described above, due to MARTIN's active parole status, an Act 79 search (2013 Wisconsin Act 79) was conducted of his vehicle. The following items were located in MARTIN's vehicle:

a.  **TARGET DEVICE A** was located under the driver's seat by the door jam.

b.  **TARGET DEVICE B** was located inside the center console cupholder.

c.  **TARGET DEVICE C** was located inside the center console cupholder.

22.  The **TARGET DEVICES** were taken into custody by the officer due to the fact there was a large quantity of blue M30 pills located on MARTIN's person.

23.  The **TARGET DEVICES** are currently in the lawful possession of FBI. They came into FBI's possession after MARTIN was arrested pursuant to an arrest for Possession With Intent to Deliver, a violation of State Statute 961.41(1)(a).

24.  The **TARGET DEVICES** are currently in storage at FBI, located at 3600 South Lake Drive, St. Francis, Wisconsin. In my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which their contents are, to the

8

extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of the FBI.

25.     As a result of my training and experience, I know that drug dealers and criminals use cellular phones to conduct their business and plan crimes. I am also aware that cellular telephones provide narcotics traffickers and criminals with mobile access and control over their illegal trade. They often use cellular telephones to communicate with one another in furtherance of their activities. I am also aware that drug dealers and criminals use multiple cellular telephones to try and thwart law enforcement from uncovering their illegal activity. I am also aware that individuals engaged in illegal activities take pictures using their cellular phones of themselves with narcotics and firearms. I know cell phones frequently retain information for long periods of time, including retaining call histories, text messages, voicemail messages, photographs, internet history, GPS location, and other information that can be retrieved from the cell phone even long after the cell phone ceased to be used. If unused and unaltered, like the **TARGET DEVICES** in this case, data can remain indefinitely. Cellular telephones are best analyzed in an offsite environment where the appropriate equipment can be used to download the data off the phone and preserve a copy of the downloaded material for inspection.

26.     Based on my training and experience, I believe that the evidence recovered/observed during MARTIN's arrest, including the amount of narcotics and the manner in which the narcotics were packaged, that MARTIN is involved in drug

trafficking. I also believe MARTIN maintained ownership and/or control over the **TARGET DEVICES** that were recovered as a result of his arrest.

27. Additionally, based upon the facts described above, I believe that MARTIN used the **TARGET DEVICES** to facilitate controlled substances transactions and may provide evidence of drug trafficking, which may likely be stored and recorded on the **TARGET DEVICES**. More particularly, I believe that there is probable cause to believe that a search of the information contained within the **TARGET DEVICES** described above will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances.

## TECHNICAL TERMS

28. Based on my training and experience, I use the following technical terms to convey the following meanings:

29. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back

audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

30. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

31. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

32. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been.

11

Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

33. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

34.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

35.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

36.     Based on my training, experience, and research, I know that the **TARGET DEVICES**, have capabilities that allow them to serve as a wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

38.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICES** because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of

14

knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

      f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

39.    *Nature of the examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARET DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

40.    *Manner of execution*. Because this warrant seeks only permission to examine the devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

15

41.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** described in Attachment A to seek the items described in Attachment B.

## <u>ATTACHMENT A</u>

The property to be searched is described as follows:

      a.    One black Apple iPhone bearing IMEI# 353182930612634 (hereinafter "**TARGET DEVICE A**");

      b.    One black Nokia cellular telephone bearing IMEI# 358712911622601 (hereinafter "**TARGET DEVICE B**"); and

      c.    One black Nokia cellular telephone bearing IMEI# 358712915453102 (hereinafter "**TARGET DEVICE C**").

42.    **TARGET DEVICES A**, **B**, and **C**, collectively the **TARGET DEVICES**, are currently located within FBI Evidence, located at 3600 South Lake Drive, St. Francis, Wisconsin.

This warrant authorizes the forensic examination of the **TARGET DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.   All records on the **TARGET DEVICES** described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846, and involve Joshua MARTIN, including, but not limited to:

   a.  lists of customers and related identifying information;

   b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c.  any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   d.  any information recording schedule or travel;

   e.  all bank records, checks, credit card bills, account information, and other financial records;

   f.  Photographs and/or video depicting possession of drugs and firearms;

   g.  Any evidence related to either the ownership, purchase, or possession of drugs;

   h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

   i.  All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the **TARGET DEVICES**.

2.   Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or

deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

❏ Original    ❏

**CLERK'S OFFICE**
**A TRUE COPY**
Nov 22, 2023
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Target Devices A, B, & C, currently in FBI<br>custody, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.   23   MJ   220

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____12/06/2023_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____11/22/2023 at 10:55 a.m._____          *William E. Duffin*
                                                                                                  *Judge's signature*

City and state:   Milwaukee, WI          Honorable William E. Duffin, U.S. Magistrate Judge
                                                                        *Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

 I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

The property to be searched is described as follows:

      a.     One black Apple iPhone bearing IMEI# 353182930612634 (hereinafter "**TARGET DEVICE A**");

      b.     One black Nokia cellular telephone bearing IMEI# 358712911622601 (hereinafter "**TARGET DEVICE B**"); and

      c.     One black Nokia cellular telephone bearing IMEI# 358712915453102 (hereinafter "**TARGET DEVICE C**").

2.     **TARGET DEVICES A**, **B**, and **C**, collectively the **TARGET DEVICES**, are currently located within FBI Evidence, located at 3600 South Lake Drive, St. Francis, Wisconsin.

This warrant authorizes the forensic examination of the **TARGET DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the **TARGET DEVICES** described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846, and involve Joshua MARTIN, including, but not limited to:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records;

    f. Photographs and/or video depicting possession of drugs and firearms;

    g. Any evidence related to either the ownership, purchase, or possession of drugs;

    h. Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    i. All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the **TARGET DEVICES**.

2. Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or

deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.